STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
COUNTY OF DURHAM     DISTRICT COURT DIVISION
File No. 15-CVD-____

DURHAM COUNTY
FILED
DEC 1 1 2015

APRIL HENDRIX,
    Plaintiff,

vs.

I.C. SYSTEM, INC. and PAYPAL, INC.,
    Defendants.

COMPLAINT

JURY TRIAL DEMANDED

NOW COMES APRIL HENDRIX ("Ms. Hendrix"), by and through counsel, and makes this Complaint against Defendants, I.C. SYSTEM, INC. and PAYPAL, INC., alleging and saying as follows:

## INTRODUCTION:

Ms. Hendrix, an identity theft victim, brings this action against Defendant I.C. SYSTEM, INC., a debt collection agency, for its violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., which prohibits debt collectors from engaging in abusive, deceptive and unfair practices, and of North Carolina's Prohibited Practices by Collection Agencies statute ("PPCA"), N.C.G.S. §§ 58-70-90, et seq. Ms. Hendrix alleges that the collection agency tried to make her pay on fraudulent accounts set up by identity thieves in her name.

When it enacted the FDCPA, Congress found extensive evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors. Two of Congress's stated purposes in enacting the FDCPA were to eliminate abusive and deceptive debt collection practices and to ensure that those debt collectors who refrain from abusive practices are not competitively disadvantaged. U.S. v. National Financial

1

Services, Inc., 98 F.3d 131, 135 (4th Cir. 1996). The FDCPA specifically prohibits attempts to collect amounts not due. 15 U.S.C. § 1692f(1).

Ms. Hendrix also alleges that, during the course of its illegal collection on the identity theft accounts, I.C. SYSTEM, INC. viewed her credit reports without her authorization or any permissible purpose, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq., and made illegal "robocalls" to her cellular telephone, in violation of the Telephone Consumer Protection Act at 47 U.S.C. § 227. Finally, Ms. Hendrix additionally alleges that Defendant PAYPAL, INC., a creditor on one of the accounts, knew that the account was fraudulent, but collected on it anyway, in violation of the North Carolina's Prohibited Acts by Debt Collectors statute ("PADC"), N.C.G.S. §§ 75-50, et seq.

## JURISDICTION

1. Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1681p.

2. This action arises out of Defendants' violations of the FDCPA, PPCA, FCRA, TCPA, and PADC in their illegal collection of a consumer debt.

3. Venue is proper in this judicial district because Plaintiff resides here.

4. This case is brought within one year of the FDCPA violations in compliance with the statute of limitations at 15 U.S.C. § 1692k(d), within two years of the FCRA violations in compliance with the statute of limitations at 15 U.S.C. § 1681p, and within four years of the PPCA and PADC violations, in compliance with the statute of limitations at N.C.G.S. § 75-16.2.

## PARTIES

### Plaintiff April Hendrix

5. Plaintiff APRIL HENDRIX ("Ms. Hendrix") is a natural person residing in Durham County, North Carolina.

6. Ms. Hendrix is a "consumer" and/or a person affected by a violation of the FDCPA under 15 U.S.C. §§ 1692a(3) and 1692k.

7. Ms. Hendrix is also a "consumer" as defined by the PPCA at N.C.G.S. § 58-70-90(2).

8. Ms. Hendrix is also a "consumer" as defined by FCRA at 16 U.S.C. § 1681a(c).

9. Ms. Hendrix is also a "consumer" as defined by the PADC at N.C.G.S. § 75-50(1).

### Defendant I.C. System, Inc.

10. Defendant I.C. SYSTEM, INC., ("ICS") is a Minnesota corporation with a principal place of business at 444 E. Highway 96, Vadnais Heights, Minnesota 55127, and a registered agent for service of process, CT Corporation System, at 150 Fayetteville St., Box 1011, Raleigh, North Carolina 27601.

11. ICS collects alleged debts on behalf of various creditors nationwide.

12. ICS is engaged in the business of collecting defaulted debts from North Carolina consumers by telephone and mail.

13. ICS was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

3

Case 1:16-cv-00037-NCT-JEP   Document 2   Filed 01/14/16   Page 3 of 18

14. ICS was and is a "collection agency" as defined by the PPCA, N.C.G.S. §§ 58-70-15(b) and 58-70-90(1).

15. ICS is licensed as a collection agency by the North Carolina Department of Insurance.

16. As the holder of a North Carolina collection agency license, ICS is required to comply with all provisions of North Carolina General Statutes Chapter 58, Article 70, which governs licensure, operating procedures, and prohibited practices of licensed collection agencies.

17. ICS collects alleged debts on behalf of Defendant Paypal, Inc.

18. At all times relevant to this complaint, ICS was an agent of Paypal, Inc. engaged in Paypal, Inc.'s business and acting within the course and scope of its authority, and Paypal, Inc. is therefore liable for the acts or omissions of ICS.

**Defendant PayPal, Inc.**

19. Defendant Paypal, Inc. ("PAYPAL") is a Delaware corporation with a principal place of business at 2211 North First Street, San Jose, California 95131-2021, and a registered agent for service of process, CT Corporation System, at 150 Fayetteville St., Box 1011, Raleigh, North Carolina 27601.

20. PAYPAL is an e-commerce company that allows payments and money transfers to be made through the internet through its payment services.

21. With respect to its direct and indirect efforts to collect consumer debts, PAYPAL was and is a "debt collector" as defined by the PADC at N.C.G.S. § 75-50(3).

## FACTUAL ALLEGATIONS

22. In April 2013, Plaintiff April Hendrix learned that she was the victim of identity theft.

23. Ms. Hendrix reported the identity theft to local law enforcement and set up security freezes with the major credit bureaus.

24. She spent countless hours trying to clear her name against a tidal wave of letters, collection calls, and credit reporting from creditors regarding fraudulent accounts set up in her name by identity thieves.

25. Over time, Ms. Hendrix learned that multiple individuals at multiple locations across the United States had been using her identity to apply for credit, establish utility services, obtain employment, and file tax returns.

26. Eventually, investigation of the identity theft crimes against her involved many law enforcement agencies, including the Federal Bureau of Investigation, the United States Postal Inspection Service, the United States Attorney for the Eastern District of California, and police departments all over the country, in locations as widespread as San Francisco and Detroit.

27. As a result of the widespread identity theft, Ms. Hendrix experienced extreme emotional distress with crippling physical manifestations that ultimately led her to leave her job and retire on disability.

28. In April 2014, PAYPAL contacted Ms. Hendrix and notified her that a PayPal credit line associated with her had a negative balance.

29. Ms. Hendrix had never had a Paypal credit line.

30. She did not recognize the account as an account of hers.

31. The email address associated with the account was unknown to her.

32. Ms. Hendrix contacted PAYPAL by email and telephone and explained that she was an identity theft victim, that the account in question was unknown to her, that she had not set up the account, that it was not hers, and that she had not purchased anything using the account.

33. PAYPAL's employee or agent told her not to worry about the account any further.

34. Ms. Hendrix asked if she need to do anything else to ensure that PAYPAL did not contact her further about the fraudulent account, and PAYPAL's employee or agent told her she did not need to do anything else.

35. Because the majority of creditors had been sympathetic to her as an identity theft victim and closed fraudulent accounts, Ms. Hendrix believed she had resolved the issue with PAYPAL.

36. In December 2014, however, Ms. Hendrix received a collection letter from ICS. A copy of the letter is attached hereto as Exhibit "A," with account numbers redacted.

37. The collection letter stated that she had a "delinquent" account.

38. The collection letter demanded that she make a payment on the account.

39. The collection letter indicated that ICS was collecting on the account on behalf of PAYPAL.

40. Ms. Hendrix was very upset, as she did not recognize the account as hers

6

nor have any delinquent account with Paypal.

41. She knew instantly that this must be an identity theft account.

42. She broke down sobbing over the collection letter.

43. Ms. Hendrix was unsure if this account was a different account then the one about which PAYPAL had contacted her in the spring.

44. Ms. Hendrix did not understand why PAYPAL would have sent the account to collection after she notified the company that this was an identity theft account and after PAYPAL had assured her not to worry about it any further.

45. She called ICS and asked why she had received a collection letter.

46. ICS employee or agent told Ms. Hendrix that the account had been opened in October 2014.

47. Ms. Hendrix was shocked and dismayed that, after she informed PAYPAL that she was an identity theft victim in April, PAYPAL had allowed someone to open a new account using her identifying information in October, and then the account out for collection as if it was her account.

48. Ms. Hendrix explained to ICS that she was an identity theft victim and knew nothing of the account.

49. ICS's employee or agent told Ms. Hendrix she would "take care of this."

50. Ms. Hendrix was led to believe that she did not need to do anything else to resolve the fraudulent account.

51. During 2015, however, Ms. Hendrix received repeated telephone calls to her cellular phone from ICS.

52. Ms. Hendrix believes that some of the calls used an automatic telephone dialing system, or that ICS left a messages using a prerecorded message or a computer voice.

53. Ms. Hendrix had never given ICS permission to call her cellular phone.

54. She did not even know how ICS got her phone number.

55. The calls from ICS greatly upset her.

56. The calls from ICS were harassing to her under the circumstances.

57. The phone would ring, and she would look at it fearfuly to see if it was something she wanted to answer, and then see that it was from ICS.

58. Even though Ms. Hendrix stopped answering collection calls, she would feel anxious every time she saw ICS's name show up on her phone screen as the caller.

59. In August 2015, ICS obtained and viewed an Experian credit report about Ms. Hendrix without her prior knowledge or authorization or any permissible purpose.

60. After Ms. Hendrix hired an attorney to send a cease-and-desist letter to ICS on her behalf, she learned that ICS had not only been calling her about the PAYPAL account, but also about an AT & T Uverse account.

61. Ms. Hendrix had never had an AT & T Uverse account, nor had she authorized anyone to use her name to open one.

62. As a result of the incidents described hereinabove, Ms. Hendrix experienced feelings of emotional distress, such as anxiety, nervousness, and humiliation.

63. When thinking about PAYPAL, her stomach would feel painful as if it was tied up in knots.

8

64. During this time, Ms. Hendrix was undergoing treatment for the autoimmune disease lupus.

65. It was her understanding of her medical condition that stress could exacerbate her symptoms.

66. Her doctor had told her to try to keep her stress levels down, but the ongoing collection from ICS and PAYPAL was raising her stress levels and worsening the lupus symptoms.

67. Ms. Hendrix felt as if she had lost her privacy, in that she had to hire an attorney and repeatedly explain the situation, allow access to her medical records, and discuss intimate details of her personal life, medical history, and family finances.

68. Additionally, Ms. Hendrix also incurred out-of-pocket expenses, including the cost of obtaining credit reports to check whether PAYPAL or ICS had reported the account to the credit bureaus.

69. Upon information and belief, based on a review of news articles and public record lawsuit filings, ICS has a history of abusive and wrongful debt collection practices.

70. The policies and procedures of ICS regarding debt collection evince willfulness, wantonness, and reckless disregard for the rights and interests of consumers, and led directly to the injuries to Ms. Hendrix described hereinabove.

9

Case 1:16-cv-00037-NCT-JEP   Document 2   Filed 01/14/16   Page 9 of 18

## CAUSES OF ACTION

### Count One:
### *(As to Defendant ICS)*
### Violations of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692, *et. seq.*

71. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

72. The accounts that ICS was collecting from Ms. Hendrix on behalf of PAYPAL and AT & T Uverse were "debts" under 15 U.S.C. § 1692a(5).

73. Defendant ICS has violated the Fair Debt Collection Practices Act by actions that include, but are not limited to, the following:

   a. Representing to Ms. Hendrix that she had a "delinquent" account when she did not and attempting to collect from her debts for which she was not legally liable, even after Ms. Hendrix notified ICS that she was an identity theft victim. This conduct constitutes:

      i. False, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of the FDCPA at 15 U.S.C. § 1692e;

      ii. False representation of the character, amount, or legal status of the alleged debt, in violation of the FDCPA at 15 U.S.C. § 1692e(2)(A);

      iii. Use of false representations or deceptive means to attempt to collect a debt, in violation of the FDCPA at 15 U.S.C. § 1692e(10); and

      iv. Engagement in unfair or unconscionable means in attempt to collect

10

amounts not permitted by law, in violation of the FDCPA at 15 U.S.C. § 1692f(1).

b. Making repetitive telephone collection calls, the natural consequence of which were to harass, oppress, and abuse Ms. Hendrix, who it knew to be the victim of identity theft, in violation of the FDCPA at 15 U.S.C. § 1692d.

74. As a result of Defendant's actions, Plaintiff has suffered actual damages including emotional distress and physical symptoms, and has had to hire an attorney.

75. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) from Defendant ICS; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**Count Two:**
*(As to Defendant ICS)*
**Violations of the N.C. Prohibited Practices by Collection Agencies N.C.G.S. § 58-70-90, *et seq.***

76. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

77. The accounts that ICS was collecting from Ms. Hendrix on behalf of PAYPAL and AT & T Uverse were "debts" alleged to be owed or due from a consumer under N.C.G.S. § 58-70-90(3).

78. At all times relevant, Defendant ICS, acting by and through its officers, agents, employees, or assigns, was engaged in commerce in the state of North Carolina.

79. Defendant has violated the North Carolina's Prohibited Practices by Collection Agencies statute by actions that include, but are not limited to, the following:

   a. Representing to Ms. Hendrix that she had a "delinquent" account when she did not and attempting to collect from her debts for which she was not legally liable, even after Ms. Hendrix notified ICS that she was an identity theft victim, which conduct constitutes a false representation of the character, extent, or amount of an alleged debt, in violation of N.C.G.S. § 58-70-110(4) and an unconscionable means of debt collection, in violation of N.C.G.S. § 58-70-115; and

   b. Making repetitive telephone collection calls, the natural consequence of which were to harass, oppress, and abuse Ms. Hendrix, who it knew to be the victim of identity theft, in violation of N.C.G.S. § 58-70-100.

80. Defendant ICS's acts are also unfair and deceptive in violation of N.C.G.S. § 75-1.1 in that they offend established public policy, and are immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead.

81. As a result of Defendant ICS's actions, Plaintiff has suffered injury including emotional distress, anxiety, frustration, and inconvenience in attempting to resolve this matter and has had to hire an attorney.

82. As a result of Defendant ICS's violations of the PPCA, Plaintiff is entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 pursuant to N.C.G.S. § 58-70-130 from Defendant for each

violation attributable to Defendant; and, reasonable attorney's fees and costs pursuant to N.C.G.S. § 75-16.

83. Defendant ICS is also liable for punitive damages in that it knew or should have known from its own conversations with Ms. Hendrix that its continued collection on the Bill was wrong, but it failed to take steps to end such collection, and conducted its wrongful behavior described hereinabove willfully, intentionally, maliciously, and with reckless disregard for Plaintiff's rights and interests.

**Count Three:**
***(As to Defendant PAYPAL)***
**Violations of the N.C. Prohibited Acts by Debt Collectors**
**N.C.G.S. § 75-50,** *et seq.*

84. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

85. The account that ICS was collecting from Ms. Hendrix on behalf of PAYPAL was a "debt" alleged to be owed or due from a consumer under N.C.G.S. § 75-50(2).

86. At all times relevant, Defendant PAYPAL, acting by and through its officers, agents, employees, or assigns, was engaged in commerce in the state of North Carolina.

87. Defendant has violated the North Carolina's Prohibited Practices by Collection Agencies statute by actions that include, but are not limited to, the following:

   a. Representing to Ms. Hendrix through its agent, ICS, that she had a "delinquent" account when she did not and attempting to collect from her a

debt for which she was not legally liable, even though PAYPAL knew that she was an identity theft victim, which conduct constitutes a false representation of the character, extent, or amount of an alleged debt, in violation of N.C.G.S. § 75-54(4) and an unconscionable means of debt collection, in violation of N.C.G.S. § 75-55; and

    b. Making through its agent ICS repetitive telephone collection calls, the natural consequence of which were to harass, oppress, and abuse Ms. Hendrix, who it knew to be the victim of identity theft, in violation of N.C.G.S. § 75-52.

88. Defendant PAYPAL's acts are also unfair and deceptive in violation of N.C.G.S. § 75-1.1 in that they offend established public policy, and are immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead.

89. As a result of Defendant PAYPAL's actions, Plaintiff has suffered injury including emotional distress, anxiety, frustration, and inconvenience in attempting to resolve this matter and has had to hire an attorney.

90. As a result of Defendant PAYPAL's violations of the PPCA, Plaintiff is entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 pursuant to N.C.G.S. § 75-56 from Defendant for each violation attributable to Defendant; and, reasonable attorney's fees and costs pursuant to N.C.G.S. § 75-16.

91. Defendant PAYPAL is also liable for punitive damages in that it knew or

14

Case 1:16-cv-00037-NCT-JEP   Document 2   Filed 01/14/16   Page 14 of 18

should have known from its own conversations with Ms. Hendrix that its continued collection on the Bill was wrong, but it failed to take steps to end such collection, and conducted its wrongful behavior described hereinabove willfully, intentionally, maliciously, and with reckless disregard for Plaintiff's rights and interests.

**Count Four:**
*(As to Defendant ICS)*
**Violations of the Fair Credit Reporting Act ("FCRA")**
**15 U.S.C. § 1681, et seq.**

92. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

93. Defendant ICS has violated the FCRA at 15 U.S.C. § 1681b(f) by obtaining Ms. Hendrix's credit report without her authorization:

   a. Under the FCRA at 15 U.S.C. § 1681b(f), any person is prohibited from obtaining a credit report on a consumer unless the person has a permissible purpose for procuring the report and certifies that purpose to the consumer reporting agency.

   b. The permissible purposes allowed by the Act are set forth in 15 U.S.C. § 1681b.

   c. Under 15 U.S.C. § 1681b(a)(3)(A), a collection agency such as ICS has a permissible purpose to obtain a credit report when it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving [...] review or collection of an account of, the consumer[.]"

d. 15 U.S.C. § 1681b(a) does not permit a collection agency to obtain credit reports of identity theft victims who are not liable on an account.

e. A collection agency which obtains a credit report of an identity theft victim who is not liable on an account violates 15 U.S.C. § 1681b(f) unless the victim has authorized release of the credit report.

f. Defendant has violated the FCRA at 15 U.S.C. § 1681b(f) by obtaining and using Ms. Hendrix's credit report without a permissible purpose that had been certified to the consumer reporting agency, without her permission, and when Defendant had actual knowledge that Ms. Hendrix was the victim of identity theft and that Defendant had been collecting on the identity theft account.

94. Defendant's conduct, action and inaction in Ms. Hendrix's case was willful, rendering them liable for actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

95. In the alternative, Defendant was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

96. The Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount determined by the Court pursuant to 15 U.S.C. § 1681n, or, in the alternative, 15 U.S.C. § 1681o.

16

Case 1:16-cv-00037-NCT-JEP   Document 2   Filed 01/14/16   Page 16 of 18

### Count Five:
### *(As to Defendant ICS)*
### Violations of the Telephone Consumer Protection Act ("TCPA")
### 47 U.S.C. § 227

97. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

98. Defendant ICS has violated the TCPA at 47 U.S.C. § 227(b)(1)(A)(iii) by making calls to Ms. Hendrix's cellular telephone using an autodialer and/or thereafter using a prerecorded message or a computer voice to leave her a message or speak to her when she answered the phone.

99. Defendant's violations of the TCPA were willful.

100. As a result of Defendant's violations of the TCPA, Ms. Hendrix is entitled to recover for her actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, pursuant to 47 U.S.C. § 227(b)(3), and to have such recovery increased at the court's discretion to an amount equal to not more than three times that amount under the same statutory provision.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff APRIL HENDRIX prays the Court to:

1. Award her on her First Cause of Action actual damages in an amount to be determined at trial and statutory damages of $1,000.00 from Defendant ICS pursuant to the violations of the Fair Debt Collection Practices Act alleged therein;

2. Award her on her Second and Third Causes of Action actual damages and punitive damages in an amount to be determined at trial and $4000 in statutory damages

per violation from each Defendant pursuant to the violations of N.C.G.S. § 58-70-90, et seq. and 75-50, et seq. alleged therein;

3. On her Fourth Cause of Action, award her actual, statutory, and punitive damages in an amount to be determined at trial against Defendant ICS pursuant to the violations of 15 U.S.C. § 1681, et seq. by that Defendant alleged therein;

4. On her Fifth Cause of Action, award her her actual monetary loss from Defendant ICS's violations of the Telephone Consumer Protection Act, or award her $500 in damages for each such violation, whichever is greater, and treble the amount of such recovery;

5. Award her her costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); 15 U.S.C. § 1681n (or, in the alternative, 15 U.S.C. § 1681o); and N.C.G.S. § 75-16.1;

6. Award her pre-judgment and post-judgment interest;

7. Grant trial before a jury on all issues so triable; and

8. Grant such other and further relief as the Court deems just and proper.

THIS the 11th day of December, 2015.

Respectfully submitted by:

*/s/ Suzanne Begnoche*
Suzanne Begnoche, Attorney at Law
Attorney for Plaintiff
NCSB # 35158
P.O. Box 2035
Chapel Hill, NC 27515
Telephone: (919) 960-6108
Facsimile: (919) 500-5289
suzanne.begnoche@begnochelaw.com